UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUIS CAMILO DIAZ VASQUEZ,

                Petitioner,

    v.

JULIO HERNANDEZ, *et al.*,

                Respondents.

Case No. C26-1172-MLP

ORDER

Petitioner Luis Camilo Diaz Vasquez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 asserting that his prolonged immigration detention without a bond hearing, and without a finding that he is a flight risk or a danger to the community, violates the Due Process Clause of the Fifth Amendment. (Dkt. # 1 at 1, 3.) His petition is supported by sworn declarations from himself (dkt. # 3) ("Diaz Vasquez Decl.") and his attorney Peyton Jacobsen (dkt. # 2) ("Jacobsen Decl."). Respondents filed a timely return (dkt. # 7), along with sworn declarations from Deportation Officer Paul Correa (dkt. # 8) ("Correa Decl.") and their counsel Alixandria Morris (dkt. # 9) ("Morris Decl."). Petitioner filed a timely traverse in reply (dkt.

ORDER - 1

# 10), along with another sworn declaration from himself (dkt. # 11) ("Second Diaz Vasquez Decl."). Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[1]

### I.      PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Colombia who arrived in the United States with his family on January 19, 2025. (Dkt. # 1, ¶ 17; Diaz Vasquez Decl., ¶ 2; dkt. # 7 at 7; Correa Decl., ¶ 3.) Petitioner states he fled Colombia to seek asylum because he was shot "by traffickers" after reporting criminal activity. (Diaz Vasquez Decl., ¶ 6.) Petitioner was apprehended without inspection "shortly after crossing into the United States" by United States Customs and Border Protection ("CBP") near Lukeville, Arizona. (*Id.*, ¶¶ 5, 7; Correa Decl., ¶ 3.)

Petitioner was initially placed into expedited removal proceedings pursuant to Section 235(b)(1) of the Immigration and Nationality Act ("INA"), determined to be inadmissible pursuant to INA § 212(7)(A)(i)(I)[2], and ordered removed. (Correa Decl., ¶ 3; Morris Decl., Ex. 1 (Notice and Order of Expedited Removal).) On January 22, 2025, Petitioner expressed fear of returning to Colombia. (Correa Decl., ¶ 4; Diaz Vasquez Decl., ¶ 10.)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

[2] Section 212(7)(A)(i)(I) is codified under 8 U.S.C. § 1182(a)(7)(A)(i), which provides: Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission-

> (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title, or

> (II) whose visa has been issued without compliance with the provisions of section 1153 of this title, is inadmissible.

ORDER - 2

On February 2, 2025, Petitioner was transferred to the NWIPC. (Diaz Vasquez Decl., ¶ 11; Correa Decl., ¶ 5.)

On April 9, 2025, Petitioner was found to have a credible fear related to his return to Colombia. (Diaz Vasquez Decl., ¶ 12; dkt. # 7 at 7.)

On May 20, 2025, DHS issued Petitioner a Notice to Appear ("NTA"), charging him under INA §§ 212(a)(7)(A)(i)(l) and 212(a)(6)(A)(i). (Jacobsen Decl., Ex. B; Correa Decl., ¶ 9.) The NTA indicated that the prior § 235(b)(1) expedited removal order was vacated pursuant to 8 C.F.R. § 208.30. (Jacobsen Decl., Ex. B.)

On November 18, 2025, a hearing was held during which Petitioner's asylum claim was denied. (Dkt. # 1, ¶ 23; Diaz Vasquez Decl., ¶ 14; Correa Decl., ¶ 14.) The immigration judge ordered Petitioner be removed to Columbia but granted withholding of removal under INA § 241(b)(3).[3]  (Diaz Vasquez Decl., ¶ 14; Correa Decl., ¶ 15.) On December 9, 2025, the Department of Homeland Security appealed the order granting withholding of removal to the Board of Immigration Appeals ("BIA"). (Correa Decl., ¶ 16.) On December 23, 2025, Petitioner appealed the final order of removal to the BIA. (*Id.*, ¶ 17; Diaz Vasquez Decl., ¶ 15.)

On March 11, 2026, Petitioner received a custody redetermination hearing in immigration court. (Morris Decl., Ex. 3.) The immigration judge concluded the immigration court lacked jurisdiction to determine custody or bond because Petitioner is subject to "Mandatory Detention under *Matter of M-S & Matter of Q. Li*; 235(b)(1) and 235(b)(2)(A)" and "Mandatory Detention under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)." (*Id.*) The order further provides:

---

[3] Petitioner asserts the order of removal was issued on November 18, 2025. (*See* dkt. # 1, ¶ 23; Diaz Vasquez Decl., ¶ 14.) Respondents assert the removal order was issued on November 25, 2025. (*See* dkt. # 7 at 8.) The removal order is not in the record, but the Automated Case Information sheet for Petitioner's immigration case shows a decision date for the immigration judge's order of withholding as November 25, 2025. (*See* Jacobsen Decl., Ex. D.)

ORDER - 3

The court specifically finds that Respondent is not a *Rodriguez-Vasquez* or a *Maldonado-Bautista* class member. Respondent's request for an alternative finding is denied. Respondent was apprehended by Border Patrol within 24 hours of his last entry into the US without admission. This is a case clearly controlled by Matter of Q. Li. To the extent that Respondent makes a claim to constitutional issues requiring a bond hearing, those issues are beyond the jurisdiction and powers delegated to the immigration judge.

(Morris Decl., Ex. 3.)

On April 7, 2026, Petitioner filed the instant petition, arguing that because his detention has become unreasonably prolonged in violation of his due process rights, he is entitled to a bond hearing before a neutral decisionmaker. (*See generally* dkt. # 1.) Respondents contend Petitioner's continued detention remains lawful pursuant to 8 U.S.C. § 1225(b) and that he is not entitled to a bond hearing—either statutorily or constitutionally. (*See generally* dkt. # 7.)

## II.  LEGAL STANDARDS

### A.  Habeas Petitions

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B.  Detention Authority

Under 8 U.S.C. § 1225, a noncitizen who "arrives in the United States," or is "present" in the United States "but has not been admitted," is treated as an "applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into one of two categories, those under § 1225(b)(1) and those covered by § 1225(b)(2). "Normally, noncitizens covered by § 1225(b)(1)

ORDER - 4

are subject to an expedited removal process that does not include a hearing before an [Immigration Judge] or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). However, where a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," they must be referred for an interview with an asylum officer. *Id*. (quoting 8 U.S.C. § 1225(b)(1)(A)(ii); citing 8 C.F.R. § 208.30(d)). If the officer finds a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." *Id*. (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)). Section 1225(b)(2) has been described by the United States Supreme Court as a "catchall provision that applies to most other applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Both § 1225(b)(1) and § 1225(b)(2) mandate detention of noncitizens for the entirety of the applicable proceedings. *Jennings*, 583 U.S. at 302. And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296). "[D]etention must continue until immigration officers have finished considering the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Jennings*, 583 U.S. at 299.

Section 1231(a), by contrast, governs the detention and release of noncitizens who have been ordered removed. During the "removal period," which typically lasts 90 days, detention is mandatory. 8 U.S.C. § 1231(a)(2). The removal period is triggered by the latest of the following: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date

ORDER - 5

the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(A)-(B); *see Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021) (an order of removal becomes "administratively final" within the meaning of 8 U.S.C. § 1231(a)(1)(B)(i) when "the agency's review proceedings" are complete).

### III.   DISCUSSION

**A.   Petitioner is detained pursuant to 8 U.S.C. § 1225(b)**

To determine whether Petitioner's detention is authorized, the Court first looks to the statutory provision to confer authority for his detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). The Parties agree, and the record supports, that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b).[4] (*See* Dkt. ## 1, ¶¶ 40, 42; 7 at 1, 9; Correa Decl., ¶ 3.) Petitioner was apprehended shortly after entering the United States without inspection and placed in expedited removal proceedings pursuant to § 1225(b)(1). After he was determined to have a credible fear of persecution, he remained detained and placed in full removal proceedings. (Correa Decl., ¶ 9; Jacobsen Decl., Ex. B; *see* 8 U.S.C. § 1225(b)(1)(B)(ii).) Although an immigration judge has issued an order of removal and granted withholding of removal, both of those rulings have been appealed to the BIA. *See* 8 U.S.C. § 1101(a)(47)(B)(i) (stating that an "order of deportation" becomes final upon "a determination by the Board of Immigration Appeals affirming such order"); 8 C.F.R. § 241.1(a) ("An order of

---

[4] Respondents argue Petitioner's detention falls under § 1225(b)(1) because "he is subject to expedited removal procedures." (*See* dkt. # 7 at 9.) Petitioner's expedited removal order was vacated on May 20, 2025, pursuant to a positive credible fear finding. (*See* Jacobsen Decl., Ex. B.) He was subsequently placed into full removal proceedings under INA § 240. (*Id.*; *see* 8 C.F.R. § 208.30(f).) Petitioner does not challenge this or otherwise argue it affects the Government's statutory authority to detain (*see generally* dkt. # 10) and acknowledges he is subject to the mandatory detention scheme pursuant to 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1225(b)(1). (Dkt. # 1 at 11.) Courts in this District apply the *Banda* test (*see infra*, Part B) to alleged prolonged detentions under § 1225(b) generally, so the Court need not determine which specific detention statute under § 1225(b) applies to Petitioner, considering the Parties' agreement and the record that supports finding Petitioner is detained under § 1225(b).

ORDER - 6

removal made by the immigration judge. . .shall become final. . .[u]pon dismissal of an appeal by the Board of Immigration Appeals. . .”). Accordingly, Petitioner’s removal order is not “final” for purposes of § 1231(a) and, as the parties acknowledge, his detention continues to be governed by § 1225(b).

**B.      The *Banda* Test**

Both the Supreme Court and Ninth Circuit have “grappled . . . with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.” *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015) (quoted source omitted) (discussing, *inter alia*, *Zadvydas*, 533 U.S. 678, *Demore v. Kim*, 538 U.S. 510 (2003), and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005))*, rev’d sub nom. Jennings*, 583 U.S. 281); *see also Toktosunov v. Wamsley*, 2025 WL 3492858, at *2-4 (W.D. Wash. Dec. 5, 2025) (discussing case law).

In *Jennings*, the Supreme Court held that § 1225(b) “unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings.” *Banda*, 385 F. Supp. 3d at 1115 (citing *Jennings*, 583 U.S. at 297, 303). While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, *see* 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed “grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government’s arbitrary deprivation of liberty would have thought so.” *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Moreover, “[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond

hearing, will – at some point – violate the right to due process." *Maliwat v. Scott*, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

Neither the Supreme Court, nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See Banda*, 385 F. Supp. 3d at 1106. Courts in this District apply the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b) violates due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3; *Hong v. Mayorkas*, 2022 WL 1078627, at *4-5 (W.D. Wash. Apr. 11, 2022). In *Banda*, the court found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117. The court declined to adopt a rule that detention became unreasonably prolonged at six months, explaining that, pursuant to *Zadvydas*, "at six months, the burden is on the detainee – not the government – to establish a basis for release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the constitutional question before the court, namely whether petitioner's prolonged detention has become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701). The court, instead, adopted a multi-factor test to apply in making the determination of whether § 1225(b) detention has become unreasonable, considering: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

//

//

ORDER - 8

**C.        Application of the *Banda* Test**

The Parties acknowledge this Court's utilization of the *Banda* test (*see* Dkt. ## 1, ¶¶ 34-40; 7 at 10-12) and the Court herein applies that test in determining whether Petitioner's continued detention without a bond hearing is justified. The Court thereafter considers the relief requested by Petitioner.

*1.        Length of Detention*

The first factor, the length of detention to date, is the most important one. *Banda*, 385 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (citing cases).

As of the date of this Order, Petitioner has been detained by ICE for over fifteen (15) months. (*See* Diaz Vasquez Decl., ¶ 5; dkt. # 7 at 11; Correa Decl., ¶ 3.) Respondents "acknowledge that [Petitioner's] detention has become prolonged." (Dkt. # 7 at 11.) Reasonably so, as courts in this District have found that periods of detention ranging from eleven to thirty months favor the detainee. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *4; *Toktosunov*, 2025 WL 3492858, at *4 (finding sixteen months of detention favored detainee); *Banda*, 385 F. Supp. at 1118-19 (finding approximate seventeen-month detention strongly favored detainee). The Court therefore finds the first *Banda* factor weighs in favor of Petitioner.

*2.        Likely Duration of Future Detention*

Under the second *Banda* factor, the Court considers how long the petitioner's detention is likely to continue absent judicial intervention, *i.e.,* "the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

ORDER - 9

Petitioner argues that this second factor weighs in his favor because his appeal of the immigration judge's order granting withholding of his removal could "take years to process," possibly longer should he need to appeal the BIA's decision (Dkt. # 1, ¶ 36.) Respondents acknowledge the pending appeal but suggest any timeline of future detention would be speculative and argue the second factor should therefore be neutral. (Dkt. # 7 at 11.) In reply, Petitioner argues that Respondents' claim that any estimate would be speculative "discounts the reality of the appeals process" and that Petitioner could be detained for years if he appeals to the Ninth Circuit. (Dkt. # 10 at 5) (citing to several cases in this District which discuss the timeline for appeals and acknowledge that factor weighs in favor of the petitioner under the *Banda* test).)

The Court finds that, given both parties filed their respective appeals in December of 2025, proceedings are likely to continue for a significant period of time. *See Banda*, 385 F. Supp. 3d at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer. This factor favors granting petitioner a bond hearing."). The Court has no reason to believe Petitioner's case here is not similarly situated and Respondents' have not suggested Petitioner's case is distinguishable from the similarly "speculative" timeline in *Banda*.

The Court also observes that, should Petitioner's withholding of removal be affirmed on appeal, the final order cannot be executed to remove him to Colombia and Respondents would have to pursue third country removal options. *See Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004); *see also* 8 C.F.R. §§ 208.16(f); 208.22. Should the Government seek to pursue those options, they would implicate additional administrative processes, which would also prolong detention. The Court therefore finds that the second *Banda* factor weighs in favor of Petitioner.

ORDER - 10

3.      *Conditions of Detention*

Under the third *Banda* factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. at 1119 (quoted source omitted).

While Respondents acknowledge the third factor in their return, they note only that Petitioner is detained at the NWIPC and that because "he has not asserted that his conditions of detention are meaningfully different from any other detainee at the NWIPC," the factor should be neutral. (Dkt. # 7 at 11.) Petitioner argues that the "[p]oor conditions within the NWIPC have been well documented" and points to several news articles purportedly in support. (Dkt. # 1, ¶ 37 n.3.) Petitioner himself also alleges prison-like conditions at the NWIPC. (Second Diaz Vasquez Decl., ¶¶ 5-8.) Petitioner claims to be confined to a window-less cell at night (which also floods), to have little access to the outdoors, and to have gotten sick from poor food quality. (*Id.*)

Courts in this District have found in prior actions that conditions at the NWIPC are "similar. . .to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6 (citing *Doe v. Bostock*, 2024 WL 3291033, at *11 (W.D. Wash. March 29, 2024)); *Rahman v. Garland*, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025)); *see also Toktosunov*, 2025 WL 3492858, at *5. Because Petitioner provides evidence supporting the similarity between conditions at the NWIPC and the conditions of criminal incarceration, the Court here finds the third factor weighs in Petitioner's favor.

ORDER - 11

### 4. Delays in the Removal Proceedings Caused by Petitioner

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the Petitioner. *Banda*, 385 F. Supp. 3d at 1119. Petitioner asserts that he has not caused any delays in his proceedings, but rather "done everything within his power to move his case forward." (Dkt. # 1, ¶ 38.) Specifically, Petitioner states that he: (1) immediately expressed fear of returning to Colombia; (2) actively pursued counsel to represent him; (3) attended and participated in all scheduled court hearings; and (4) actively pursued his appeal while adhering to statutory deadlines. (*Id.*). Respondents allege that Petitioner has sought to extend his removal proceedings and point to the Declaration of Paul Correa, which identify two motions filed by Petitioner to continue his immigration proceedings. (Dkt. # 7 at 11; *see* Correa Decl., ¶¶ 11-13.)

In *Banda*, the court acknowledged that "[c]ourts should be sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." 385 F. Supp. 3d at 1119 (internal quotation omitted) (alteration in original). Respondents here do not suggest that Petitioner's motions to continue his immigration hearings were intentionally dilatory or otherwise filed in bad faith. Petitioner asserts they were necessary because material that was to be used in support of his asylum case was in Colombia. (Second Diaz Vasquez Decl., ¶ 9.) Accordingly, the Court does not find evidence that Petitioner caused any delay in his proceedings and thus, this factor weighs in favor of Petitioner.

### 5. Delays in the Removal Proceedings Caused by Respondents

Under the fifth factor, the Court "considers the nature and extent of any delays in the removal proceedings caused by the government." *Banda*, 385 F. Supp. at 1120. Petitioner alleges

ORDER - 12

the Government violated the terms of the class settlement agreement in *Padilla v. ICE*[5], which, Petitioner asserts, required him to be "referred for a credible fear interview within seven business days of asserting a fear of return to [his] home country" and have that interview take place with a decision rendered within sixty (60) days. (Dkt. # 1 at 2, ¶ 38 n.1.) Petitioner further asserts that the Government's failure to comply with *Padilla* "caused a delay of nearly four months" as it "prevented [Petitioner] from obtaining the certainty he needed to hire a removal defense attorney and prepare his case." (Dkt. # 10 at 9.) Respondents do not address the allegation that the Government violated any settlement agreement, suggest Petitioner was not a bound class member, or otherwise explain the delay. (*See generally* dkt. # 7 at 11.) Respondents only argue that this factor favors them as there is no evidence the Government has "intentionally" delayed Petitioner's proceedings. (*Id*.) Respondents offer no authority that stands for the proposition that any delay attributable to the Government must be intentional to weigh in favor of a petitioner in the context of *Banda*. Courts in this District have focused on whether the delay can be attributed to the Government generally. *E.g.*, *Martinez v. Clark*, 2019 WL 5968089 (W.D. Wash. May 23, 2019), at *10, *report and recommendation adopted,* 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

While this Court is not making a specific finding that the Government violated the terms of any settlement agreement, the evidentiary record does support finding approximately eighty (80) days passed between Petitioner expressing fear of returning to Colombia and the Government completing his credible fear interview. (Diaz Vasquez Decl., ¶ 7, ¶ 12; Correa Decl., ¶ 4, ¶ 8.) Petitioner asserts this delay was caused by immigration officials and

---

[5] Order Granting Stipulated Motion to Dismiss Count IV and Granting Final Approval of Proposed Class Settlement, *Padilla v. U.S. Immigration & Customs Enf't*, No. 2:18-cv-00928-MJP (W.D. Wash. January 5, 2024), ECF No. 225.

ORDER - 13

Respondents offer no explanation for the delay. The Court finds this factor weighs in favor of Petitioner.

      6.      *Likelihood Removal Proceedings Will Result in Final Order of Removal*

Finally, under the sixth *Banda* factor, the Court considers "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (quoted source omitted). The Court, in other words, considers whether the petitioner has asserted any defenses to removal. *Id*. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id*. (cited source omitted). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id*. (quoted source omitted).

Petitioner asserts that he "clearly presented a strong defense to removal based on his fear of persecution in Colombia" and that "the Court should consider the Immigration Judge's determination that [Petitioner] was entitled to Withholding of Removal." (Dkt. # 1, ¶ 39.) Respondents acknowledge only that the final order of removal has been appealed and argue that, because "it is speculative what outcome will occur at the BIA, this factor should be neutral." (Dkt. # 7 at 11.)

As a general matter, courts in this District have weighed an immigration judge's past determinations as some evidence of the future disposition of an appeal, on the assumption that these determinations are more likely than not to be affirmed. *See, e.g., Fadul Mohamed*, 2025 WL 1920341, at *5 (where petitioner was appealing an order of removal, factor weighed against

ORDER - 14

granting a hearing); *Toktosunov*, 2025 WL 3492858, at *5-6 (opposite result where Government was appealing a grant of asylum).

Here, the Court finds there is some likelihood that Petitioner's appeal will result in a final order of removal, which weighs in favor of Respondents. However, because the immigration judge granted withholding of removal, it remains speculative whether the appeal will result in an *executable* final order of removal. The record is silent as to what third countries Respondents may pursue and what defenses Petitioner might raise against removal to those countries. On the current record, the Court cannot predict what further proceedings may arise should the final order of removal be affirmed, nor whether Petitioner, even with a final order, might ultimately be removed. Therefore, the Court finds the sixth factor is neutral.

7.      *Weighing the Factors*

In sum, five factors (length of detention, duration of future detention, conditions of detention, and delays attributable to the parties) weigh in Petitioner's favor, while one factor (the likelihood that final proceedings culminate in a final order of removal) is neutral. None weigh in Respondents' favor. The Court therefore concludes that the *Banda* test favors Petitioner, that his continued detention under § 1225(b) has become unreasonably prolonged, and that due process requires he be provided a bond hearing. *See Banda*, 385 F. Supp. 3d at 1120 (finding same where four factors weighed in petitioner's favor and two were neutral).

**D.      Relief**

Having found Petitioner's continued detention unreasonable, the Court turns to the relief requested. Petitioner requests that the Court issue a writ of habeas corpus ordering that Respondents provide him with a bond hearing before a neutral decisionmaker, at which the Government bears the burden of establishing dangerousness or flight risk, and that no alternative

ORDER - 15

to detention would mitigate those risks, by clear and convincing evidence. (Dkt. # 1 at 12.) Petitioner separately requests that this Court declare that his current detention violates the Due Process Clause of the Fifth Amendment. (*Id.*) Finally, Petitioner requests that the Court provide "leave to seek attorney's fees and costs under the Equal Access to Justice Act and on any other basis justified under law." (*Id.*)

The Court, consistent with the practice of this District, will order that a bond hearing be held before an immigration judge within fourteen days of this Order. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. Also, Respondents are properly held to a clear and convincing standard of proof at that hearing, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered. *See, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10.

Regarding Petitioner's request for this Court to declare his detention to be violative of due process (*see* dkt. # 1 at 13), the Court has already made the finding that his detention has become unreasonably prolonged and due process requires him to have a bond hearing. To the extent Petitioner seeks relief beyond that finding, such as declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Petitioner does not engage with the elements required for such relief or otherwise provide legal authority specifically addressing that relief. To that end, Petitioner's request is denied.

Finally, regarding Petitioner's request for leave from the Court to seek attorney's fees and costs under the Equal Access to Justice Act or any other lawful basis, the Court observes that Petitioner's request for attorney fees must be set forth in a fee petition pursuant to the Equal

ORDER - 16

Access to Justice Act, 28 U.S.C. § 2412. The Court therefore denies any relief to the extent it seeks to deviate from that process.

## IV.    CONCLUSION

Based on the foregoing, this Court hereby FINDS and ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (dkt. 1) is GRANTED, in part.

(2)    Within **fourteen (14) days** of the date of this Order, Respondents shall provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

(3)    All remaining requested relief is DENIED without prejudice.

Dated this 29th day of April, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 17